UNITED STATES DISTRICT COURT
DISTRICT OF CENTRAL NEW JERSEY
CLARKSON S. FISHER BLDG.
402 EAST STATE STREET
TRENTON, NEW JERSEY

| | | |
|---|---|---|
| NEAL A. COWE | ) | CIVIL ACTION |
| | ) | |
| PLAINTIFF | ) | CASE NUMBER |
| | ) | 3: 17-CV- |
| | ) | |
| V. | ) | NEGLIGENCE |
| | ) | |
| JAYNE A. MOORMANN | ) | PERSONEL INJURY |
| | ) | |
| A&M DIAGNOSTICS | ) | INTIMIDATION |
| USED AUTO SALES | ) | |
| | ) | INCONSISTANT STATEMENTS |
| PLYMOUTH ROCK | ) | |
| INSURANCE COMPANY | ) | OBSTRUCTION OF JUSTICE |
| | ) | |
| JILLIAN WAGNER | ) | FALSE STATEMENTS |
| (Individually) | ) | |
| | ) | CONSPIRACY |
| DEFENDANTS | ) | |
| Et al; | ) | HARASMENT |
| | ) | |
| | ) | 18 § U.S.C. 2331 |
| | ) | DOMESTIC TERROR |
| | ) | |

## COMPLAINT

## THE PARTIES

[ 1.] The Plaintiff  Neal A. Cowe  is a resident of the County of Clayton within
The State of Georgia and resides at 1136 North Parkwood Dr. Forest Park,
30297 and is a citizen of The United States of America.

[ 2.] The Defendant Jayne A. Moormann is a resident of the County of Ocean within the State of New Jersey and resides at 1108 Anchor Ave. Beachwood, 08722 and is a citizen of the United States of America.

[ 3.] The Plymouth Rock Insurance Company is a business corporation located at 331 Newman Springs Rd. Red Bank, in the County of Monmouth, New Jersey Zip code with a Post Office Box of number Lincroft, New Jersey zip code

[ 4.] The A & M Diagnostics Co., is located at 2034 West County Line Road in the County of Ocean New Jersey 08527 a for profit company which is in the business of re-sales and repair of motor vehicles sanctioned by the rules and regulations for mechanical repair with its onsite shop and a for sale lot of used vehicles displayed on their property Under the State of New Jersey ASE certified mechanical license requirements would apply.

## CONTROVERSIAL DOLLAR AMOUNT

[ 5.] The plaintiff states that the controversial dollar amount of $75,000.00 has been met by his medical expenses being greater than $168,000.00, as of, April 7, 2017.

## JURISDICTION

[ 6.] The Federal District Court at Trenton, New Jersey has Jurisdiction over this matter Under 42 U.S.C. § 1331, and 18 § U.S.C. 2331.

## BACKGROUND

[ 7.]  On or about January 2, 2016 the defendant called the plaintiff, and asked
if he would be able to meet her at approximately 8:30 P.M. for something to
eat, before her work, at a fast food take out restaurant, named "Checkers" on
Rte. 37 & Hooper Ave.  in Toms River, New Jersey 08753.  As they sat and
ate in her vehicle the plaintiff became sickened from the smell that was being
omitted from the vehicles heater unit which was focused upward, by the
defendant, that had been placed on the bi-level setting, by the defendant
which was turned on full blast and right in the plaintiff's face as he entered the
vehicle she had purchased deliberately to drive for Uber a taxi service when
She was too tired to sleep in the daytime, to make additional money.

## COUNT I

[ 8.] As a direct result of his vomiting and coughing, this aggravated a pre-existing
medical condition, where a mesh was already in his stomach area to prevent
any further herniation there, but was severely opened, as shown by a CAT
scan Ordered By; Dr. Wang of the Raritan Bay Medical Center on 01/03/16
who diagnosed the injury and that it was an associated Herniation of his
bowel into the mesh lining, thus becoming very painful, caused an obvious,
and extremely noticeable disfiguration required a mesh removal surgery, and
replacement, demands compensation in the amount of $15,000,000.00 dollars.

## COUNT II

[ 9.] Before the plaintiff could undergo this now extensive surgical procedure,
a Bowel resection he would be required to submit his A.) Cardiology Report,
with Clinical notes,  B.) a recent EKG,  C.)  A current echocardiogram (TTE,)
D.) stress test results, E.) a summary of the Appendix Surgery performed at
Cambridge Hospital Cambridge Massachusetts W/ Operative notes, Pathology
report with discharge summary, F.) The Doctors notes on stomach hernia
surgical implant device, Dr. Erdelyn's Operative notes, and discharge of a
summary, EXHIBIT A.

[10.] Sent To: Emory University Hospital for Dr. John R. Galloway Professor
Of surgery who performed a 12 hour operation at Emory University Hospital
Nov. 17, 2016, 6:00 A.M to 6: P.M corrected medical damages caused at a
cost of $168,114.00 up to this date.

## COUNT III

[11.] The plaintiff had entered the Defendants newly purchased 2007 Dodge mini-
van in which she was in full custody and control of her vehicles heating
system that was focused upward directing the bi-level vent upward, forcing its
hot smelly air, directly into the plaintiff face, as he entered the defendant's
vehicle, she asked if he could smell the stench? Then as they began to eat, this
foul stench kept coming up from the heater system which had overcome him,
opened up a window but to no avail, as his condition worsened throughout the
night, had a bitter taste of almonds, and pain under his tongue.

[12.] The Plaintiff, had become disoriented in his state of mind, was overwhelmed
by these fumes. He asked the defendant what she had done about this for the
past two months? The answer was she "Opened the window's" as she drove, is
not the proper course of action. She was negligent in bring him to the (ER)
Emergency Room at Toms River Community Hospital, a mile away in her
general direction in which she was already going to the Garden State Parkway,
and in having the vehicle inspected, as she knew the smell existed.

[13.] The defendant Moormann should have brought her vehicle in for service
from where it was purchased from, negligently refused him due care by her
refusing to bring the plaintiff in for medical care, being in that occupational
field left him without any medical attention drove away, falsely claiming she
was late for her work, didn't care anything about the plaintiff's illness is a
true statement since her scheduled work hours would show that her work
employment location and her start time had been changed a few weeks earlier,
needed a dependable car for work, demands compensation in the amount of
$15,000,000.00 dollars, EXHIBIT B.

## COUNT IV

[14.] The plaintiff reiterates all of the previous allegations in counts1-3, and states within several minutes of being inside of her vehicle the Defendant Moormann was asking the Plaintiff,  what could possibly be the cause of this Stench, that was overwhelming from her heating system?  As it seems to be a combination of the smell of Gasoline, Anti-Freeze and that something has died inside of her car, he had become sickened, and then disoriented, unable to think clearly nor correctly, which led to developed a medical condition known as Tremors (shaking) that started right away and continues to exist to this day.

[15.] The Plymouth Rock Ins. Co., had been notified about this condition, stated that they would pay the emergency room bill until they discovered that it was $19,000.00, and said they would inspect the vehicle to get to the bottom of what caused this illness, so the proper medical attention could be given, but they delayed and never did any of what they said they were going to do, even after knowing this condition existed, attempt to cover up the facts, and or the injury demands compensation in the amount of $150,000,000.00 dollars, EXHIBIT C.

## COUNT V

[16.]  The defendant stated that she had smelled something funny after using the heater system for the first time in late October 2015 but since the vehicle needed to be registered, she would have to return to the A&M diagnostics to receive an inspection sticker when she returned to A&M  diagnostics, for her inspection sticker, they claimed that they didn't have time to look at her vehicle. The defendant Moormann was negligent by failing to further make or schedule an appointment with A&M allowing them the time to take any of the corrective action necessary after becoming aware of this smell condition, she had asked everyone in her inner circle of friends around her, but certainly asked a church member who is a qualified ASE certified mechanic about it.

[17.] The argument here is that seller A&M was aware of this condition from a water pump they claimed that they had already changed when the vehicle was being looked over,  before the date of purchase. The additional argument here is that A&M diagnostic's would have had to have flushed the system and run the vehicle up to its normal operating temperature, with the heater core on, to recirculate the newly replaced anti-freeze in the heater to ensure the system was up to the proper operating fluid level, did not follow the manufactures recommended procedures, demands compensation in the amount of $15,000,000.00 dollars, <u>EXHIBIT D.</u>

See: an Authorized Chrysler, dodge dealership manual to determine the correct ASE mechanical procedure's in which to follow, as this possibly would have found the cause of an anti-freeze leak and the awful foul stench of death instead of covering up the issues, related to the smell they may have known that existed, <u>EXHIBIT E.</u>

## COUNT VI

[18.] This is the Proximate cause of the Plaintiff's, Personal Injury which caused his severe vomiting and coughing which Dr. Wang of Raritan Bay Medical Center determined by a CAT SCAN caused a herniation of his bowel after having been examined in their Emergency Room on 1/03/16, the second CAT scan done on the plaintiffs brain, did not reveal an abnormality, contends he never received any of this critical information, promised to him, by the Plymouth Rock Ins., Co. such as where the vehicle was prior to this purchase, the previous owner, and how long the vehicle had been sitting, in which all of this has been obscured from him, including internet sale owner, or how long the vehicle had been parked on A&M's lot where the plaintiff has suffered extensive physical  and mental damage from unnecessarily waiting for these answers that have never forth coming for a prescribed treatment to be given, demands compensation, in the amount of  $150,000,000.00 dollars, see <u>EXHIBIT F.</u>

## COUNT VII

[19.] Upon learning that the Bowel had been herniated into his stomach lining causing him great pain, the plaintiff called his Surgeon in Atlanta, Dr. Erdelyn who had inserted the Bard (name type) mesh, approximately a year earlier, now after having laparoscopic surgery is where the mesh failed, due to the heavy coughing and vomiting, states; that oddly enough the food eaten from "Checker's" never came back up, rules out a food borne illness, just a liquid bile, and his coffee, and that the defendant never became sickened since she was becoming use to the smell.

[20.] Even though defendant was not sickened, they had eaten the same prepared foods, does not blame The "Checkers" for the sickness, Smell of Gasoline, and or Anti-freeze with the Stench of death, coming from the Defendants motor vehicle heater system, because the safety and operation of the defendant's motor vehicle is beyond any of their control, now holds this Defendant Moormann responsible in tort liability shows the 01/02/16 receipt demands compensation in the amount of $15,000,000.00 dollars EXHIBIT G.

## COUNT VIII

[21.] At that dinner, the defendant stated; "She was driving around for weeks with the all of the windows wide open with the heater system on to relieve this horrid smell inside of her vehicle, but was now use to the odor. She was additionally negligent because this was not a proper applicable solution to the main problem, after taking it to a repair garage, being their Church member Gavin Cox which would be inspected, by others at the "Old Time Automotive Co.?" 730 U.S. Highway Rte. 9, Lanoka Harbor, New Jersey, but she refused to pay for any of the time for an inspection service, and apparently drove away, knowing the condition had not been fixed or identified before the plaintiff became ill, demands compensation in the amount of $500,000.00 dollars.

## COUNT IX

[22.] The defendant Ms. Moormann having found out that she had to pay for her vehicle to be looked at, left, "Old time Automotive" without her vehicle being inspected or this condition corrected continued to drive around without this safety issue unresolved, because this is not a warrantee issue, which went on long after the plaintiff became Ill, and long after he had set up a claim file with Plymouth Rock Ins. Co. continued to stonewall the plaintiff's attempts to receive any information regarding this vehicle history or last 8 digits of her Vehicle Identification Number so the dealership Circle Dodge where it was originally purchased from could identify service records is also contributory to her negligence, after any claims adjuster failed to inspect the vehicle or submit any of the vehicle's history information, or inspection report with findings due to the plaintiff as Plymouth Rock Ins., Co., had initially stated and agreed upon, along with, the car fax report demands compensation in the amount of $150,000,000.00 dollars, EXHIBIT H.

## COUNT X

[23.] The defendant Moormann stated that she ran a car fax on the vehicle, which led her to Circle Dodge Lakewood, New Jersey but took no action to speak to them or report this incident as required by law within (10) days in a Claim file to her fore mentioned Insurance Company being Plymouth Rock Ins. Co.. located in Red Bank, New Jersey. The Plaintiff had called Plymouth Rock Ins. Co. where after this notification a claim file was set up being 077501427975 by Rebecca Kennedy, as she discussed an open claims file, in which to submit medical bills along with the Doctors medical reports to the senior member insurance supervisor Jillian Wagner who would then submit these medical bills but was diverted off to their claim adjusters on team named Tamara.

[24.]   There were periodic letters sent from Plymouth Rock Ins. co., which had reminded "Cowe" about the Statute of Limitations, where these letters came to be harassing non-sense, because Plymouth Rock Ins. Co. had no intention in adjudicating this claim and delayed for one reason or another, has never responded to any of the issues at hand in a timely manner, had written letters that went unanswered but more importantly the plaintiff filled out for them an application for benefits in which they have no explanation for not reviewing in a medical evaluation  EXHIBIT I.

[25.]  The Plymouth Rock Ins., Co., took no further action regarding the plaintiffs claim, for a proper determination of the causation or for the treatment of his illness. At some point in time Plymouth Rock Ins., Co., sent along a letter "Admitting to a Gasoline leak" claiming that the incident had been related to a fuel injector leaking, stated that it was repaired by A&M diagnostics after having been told all the fuel injectors had been replaced by them, prior to the date of the defendant Ms. Moormann's first inspection while the plaintiff listened in on their conversation as the defendant was considering this cash purchase, demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XI

[26.] Plymouth Rocks letter indicated a faulty fuel injector O-Ring that had been leaking into the cabin area of the vehicle was now repaired by A&M stating; "That this condition didn't make the plaintiff ill," contends that gasoline vapors will make anyone sick and that this is highly poisonous, so after having an anti-freeze leak, a gasoline leak and not following the manufactures recommended procedures is without an inspection report, or preliminary insurance company investigation in which to support their false claims, have refused to send along any of the results that may have been found by a Qualified ASE mechanic.

[27.] Plymouth Rock Ins., Co., had closed this claim file, stating a lack of medical reports after having requesting a medical form be filled out he sent in his completed medical release form to Plymouth Rock Ins,. as they had indicated "So they could receive the information directly" ¶ 18 from medical providers, but never once inquired into his medical treatments even though they had this ability, but rather refused any and all of the liability of these constant known defects is their contributory negligence, from that of Jillian Wagner who stands on the A&M mechanical statements demands compensation in the amount of  $150,000,000.00 dollars

## COUNT XII

[28.]  The defendant had been told by A&M all of the vehicles components were replaced or had been gone over as the plaintiff listened in to this conversation, sent a cell phone text to the church member while he was at his work, stating which components had been replaced on the vehicle while in the possession of A&M diagnostics, returned a text stating that "He didn't want any part of the transaction knowledge" being that if this statement is true, the parties were on their own, even though A&M stated these repairs had been made before her purchase. The plaintiff argues that if no one knew that it would take so much substantial mechanical repair work effort by the defendant Moormann and her insurance company to get all of these things fixed after the purchase then there is more than a certain likelihood or degree of fraud on A&M's part and that their ASE mechanical qualification are definitely in question as to A&M's deceptive acts of fraud and negligence demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XIII

[29.] Then there is the Water Pump replacement for a second time which was ongoing during the claim period because this continued to cause the smell of "Anti-freeze," still leaking into the cabin area, that as already stated had to be replaced again by A&M diagnostics, now that Plymouth Rock Ins. Co., had knowledge requested a second Medical request from the plaintiff, was fill out and send them a completed Medical Release Form so Plymouth Rock could receive additional medical evaluation reports directly as the plaintiff had another Cat Scan of his brain to verify the Doctors assessment and costs of these visits continued to delay the claim file and that Plymouth Rock Ins,. Co,. eventually dumped on the plaintiff's Medicare as his responsibility, cannot be New Jerseys best insurance company is falsely advertised by them demands compensation in the amount of $150,000,000.00 dollars

## COUNT XIV

[30.] When Plymouth Rock Ins Co. found out the cost, they had no intension of paying out $19,000.00 so at first, they deflected the ER initial costs of this situation into the lap of his automobile insurance, GEICO in a No-fault claim #0333960060101063 where they have continued to deny all the liability now leaving Medicare as the primary insurer, because the GEICO claim specialist Stated; "That this incident did not happen in the plaintiff's motor vehicle" and they cannot find any statement, in any claim report, that anyone but these four (4) defendants A&M diagnostics, Jayne Moormann, Plymouth Rock Ins. and Or Jillian Wagner (indiv.) where responsible now that they had all of the direct knowledge of the ongoing medical situation attempt to divert their liability on to others who are not involved here in any way shape or form, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XV

[31.] These defendants are all equally responsible as they are held in strict liability in Tort, refuse to acknowledge and that they continue to deny that there is anything wrong with the 2007 Dodge Mini-Van, where Medicare stated they would payout on these Medicals with the provision that if; the plaintiff recovers and he is entitled to be Granted relief, that Medicare would now be reimbursed first by the proceeds, in the current amount of $168,000.00 for the expenses payout by the plaintiff's S.S.D.I. Medical insurance, the argument here is that this insurer Plymouth Rock Ins., Co., for so many years and for so many claims have left all of their claims responsibilities to Medicare an every other insurance company to avoid a costly payout, where they are at Fault.

## COUNT XVI

[32.] On 1/11/16 the plaintiff reported this incident from Ms. Moormann's Mini-van to Medicare under 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A to Social Security Administration, stating that he had been sickened by the Heater Exchange spewing stench combined with two deadly known poisons (Gasoline and Anti-freeze) that were noticeable and suspected to be the root cause of his unexpected sickness he also called and reported the Incident to GEICO (Government Employee's Insurance Company setting up a claim file #0333960060101063 that these repairs were eventually made to the defendant's vehicle for the leaking fuel injection O-ring leaking noticeable gas fumes into her vehicle's cabin area.

[33.] One of their letters dated  from Plymouth Rock Ins., Co. about a second replacement of the water pump leaking (anti-freeze) and now after having full knowledge failed to consider the medical claims file which was blown off as no big deal, because the water pump cost was only $225.00 but fail to state that changing the water pump is $1,186 in labor plus $83.00 in tax and $12.00 for the water pump gasket if this was done twice as A&M first stated and a Second time as Plymouth Rock Ins., Co., stated comes to just under $3,000.00 add in the cost of a fuel injector $125.00 each and the associated labor cost of approximately $1,000.00 twice, by Circle Dodges estimates is clearly more than the cost of the vehicle of $4,000.00 in cash demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XVII

[34.] The plaintiff knowing that his now protruding Bowel had erupted overnight and would require a surgical procedure to take him out of pain, contacted, his heart Doctors in Atlanta, Ga. for a clearance letter for this surgery. But after examination by, Dr. Reddy & Dr. Secure he was told that he would need a Stress Test, which was conducted on 1/22/16 to determine if his heart would be strong enough for any further medical procedure performed on the bowel injury he complained about demands compensation in the amount of $1,500,000.00 dollars.

## COUNT XVIII

[35.] On January 24, 2016, the Atlanta Heart Doctors place metal stent in the plaintiff's heart to prepare him for surgery at a cost of $34,000.00 in order to insure he would make it through what turned out to be a (12) long hour surgery Plymouth Rock continued to mail their annoying letters, advising the plaintiff of his rights, did not properly evaluate his claim but continued to denied all responsibility, contending the smell [F]actor could not be Proven, even after Plymouth Rock In., Co., stated their claims adjusters would now investigate by examining this mini-van and send that report along, fail to recognize a trail of evidence is a conspiracy by the defendants to cover this up makes the plaintiff's complaint more likely than not, disputes all of Plymouth Rock Ins. Co. denial and failures demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XIX

[36.] The Plymouth Rock Ins. Co.  denial never came as a "shocker" as most to all of Plymouth Rock Ins. Co. insurance claims are shed to the other insurance companies or providers as a general practice where in this case, Medicare but most all are denied in the preliminary stages, as a cost effective way of doing business drags the claimants down by the horns with one denial letter after another then it's one delay after another from these letters the defendants have never answered any of the plaintiff's questions, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XX

[37.] The defendant Moormann asked one time, On, 01/03/16 What did the Doctor say? This was directly after his Raritan Bay Medical Center Emergency Room visit and she  was not heard from again, for the balance of the year 2016, took a could careless attitude about the plaintiffs injury as long as her insurance rates didn't go up, she would continue to deny that anything was wrong with her vehicle insults his intelligence demands compensation in the amount of $1,500,000.00 dollars.

13

## COUNT XXI

[38.] On January 23, 2017 the plaintiff received a midnight cell phone text, from Ms. Moormann Stated that, She had spoken with Plymouth Rock Ins.Co., earlier in the day and that her Text Message Said; Plymouth Rock had discussed "Cowe's" medical Records with her, defendant Moormann Said; "The Doctors have determined there was no association between the smell in her vehicle and the illness he has suffered," She; was sent a text back, and he asked  Which Doctors? made this statement after waiting up all night for her reply answered, at 6:00 A. M. she said; "They Ply. Rock Ins. Co. didn't say," cannot support this false claim, by intimidation or associated phone records, where a Doctor's appointment at 222 Shank Rd. Freehold, New Jersey on 01/05/16 (2) days after becoming Ill, with Dr. Lisa Waller their records would indicate a truthful and more accurate version of the plaintiff's chief medical complaints or a non-bias version, demands compensation in the amount of $15,000,000.00 dollars EXHIBIT J.

## COUNT XXII

[39.] The issue here maybe when the plaintiff returned to Georgia for medical care Dr. Kolano a Neurologist located at Eagles Landing Parkway in Stockbridge, Georgia said he could not determine what happened in New Jersey from his office Georgia in, ordered a Cat Scan of the plaintiff's brain, and had made a diagnosis of "Tremors" that the plaintiff first complained about that even without the New Jersey's Doctors medical records after his examination Dr. Kolano, knew that the Central Nervous System was affected demands compensation in the amount of $1,500,000.00 EXHIBIT K

## COUNT XXIII

[40.] The statement made here by Ms. Moormann implies, that a conversation Had taken place between Ply. Rock Ins., Co., with her co-defendants as she claims. The Telephone records or Insurance Claims Adjusters Notes: could make a determination about any conversations, made at a specific date and time when this may have occurred, and what was said demands verification by production of the claim file documents in contesting any made up or false statements as deceptive acts of fraud, including that this as an invasion of medical privacy acts, regarding releasing detailed or certain HIPPA medical information demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XXIV

[41.] The Plymouth Rock Insurance Company was sent a letter requesting certain Information regarding the history of the vehicle Ms. Moormann purchase from the Jackson, N.J. Auto dealer, The Manufactures Statement of Origin, the vehicles maintenance record from Circle Dodge Lakewood, New Jersey where it was originally purchased. Additionally the request asked for the names and address of all previous owners, and location of the vehicle during the Hurricane "Super Storm Sandy" October 29, 2012, along with various other questions that had been discussed with both defendants arising during, conversations specifically about any auto body shop work that may have been performed to clean up the vehicle, before being sold to Ms. Moormann.

[42.] The Plymouth Rock Ins., Co., Supervisor Jillian Wagner had closed down "Cowe's" claim file, shortly after having been sent on to "Tamara's Group" at Plymouth Rock they had stated that they would cooperate in supplying the information requested by the plaintiff, stated they were interested in getting to the bottom of the claim issue in causation, to inspect their insured's vehicle, that information was never forth coming or revealed, is fraud because if you led someone to believe you are going to do something for them and don't, but is more likely a concealment of the facts by Plymouth Rock Ins., Co., demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XXV

[43.] On or about April 1, 2017 a Saturday Plymouth Rock Ins., Co. sent their reply that they were closing down "Cowe's" claim file and refuse to supply any information, is simply a cover up, may have been caused by the text in which Ms. Moormann's claims to have had with the claims department, but is more likely than not the silent code of conspiracy at work, where neither party has ever shown a remote concern for "Cowe" becoming sick, it was stated several times that the plaintiff could not prove any of the smell issue, but were so incline to shut down the claim file failed to realize, that there was evidence saved relating directly to the Ominous odor.

[44.] This is currently Denied, but even by her own text messages she sent to the plaintiff relating to the A&M's sales person attempt in his covering up or masking over this smell by the heavy use or over use of perfume, being men's cologne. A&M sales person had applied on himself just before Ms. Moormann showed up for a re-scheduled appointment in which she was again complaining about the smell inside her vehicle, at a date and time after the delivery of the vehicle, she was told to bring the 2007 mini-van back to where she purchased it from, if she didn't want to pay for any inspection in the defendants own words, the text she SAID; "I couldn't get over the smell of perfume," when A&M went for a ride when the Heater system was on during cold weather demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XVI

[45.] At some point in time, the plaintiff received another midnight text message, regarding her Son, James Moormann's employment at the "Lowe's" at the Toms River, New Jersey. The message stated that there had been a problem at his work in which, Ms. Moormann became so alarmed placed a called, to the emergency line (911)into the Toms River Police Department to dispatch Police officers to Lowe's because the "Air Quality" was affecting her Son's breathing in his working area. The plaintiff does not dispute the call should have been made, but rather the fact that it was "Lowe's responsibility to make the call for assistance, not that of Defendant Moormann who made a Wrong, call to Police 911 line, where the Son was eventually dismissed from his job over this Fact.

[46.] Where The Fire Department has the means to ventilate any potentially dangerous situation, that the defendant from 15 miles away while at her work in Stafford Township could determine this "Lowe's" situation to be an unsafe condition, but cannot realize it for herself, that her own vehicle was an unsafe condition for other to ride in, even after attempting to Air out her vehicle, knowing that a dangerous safety condition exists, stated "Why fix something that only occurs once in a while," is negligence, demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XXVII

[47.] The Plymouth Rock Ins. Co. has misrepresented their intentions in resolving the plaintiffs claim file, at first they stated they would pay for the Emergency Room visit of 1/03/16, but refused to make any adjustment with the hospital after receiving the bill for $19,000.00., sent by certified mail U.S.P.O.. The full assessment of the medical bills would not become available but not until after a second surgery April 6, 2017 where the [S]tatute of [l]imitations on the claim file as stated by Plymouth Rock Ins., Co., would run up to and including 01/03/18 in order to correctly evaluate a fair decision. But the truth is that the insurer was always looking for a way to deny this claim, never looked into a causation so he could receive medical treatment, where gasoline, anti-freeze, and the stench of death occurred, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XXVIII

[48.] The assessment is that various materials were used to cover this condition over such as Clorox and or Ammonia poured down the ventilating system even gasoline would eliminate this smell until the force of hot air was applied such as the heater put on, when cold weather returned for the fall or winter season then the smell would be right back up where A&M may have hoped this would eventually disappear if you rode around with the windows open, this smell would dissipate somewhat but not be totally gone, causing serious injury when the vehicles widows would be totally closed and or fully up demands compensation in the amount of $15,000.000.00 dollars

## COUNT XXIX

[49.] The defendants sent along a notice stating the vehicle was in an accident and that Circle Dodge apparently doesn't perform repairs or body work on used vehicles, that they "farmed" the work out to an outside vendor, possibly (rjs) located on the same property as A&M diagnostics, however the order for any replacement parts may still go thru Dodge, as a Chrysler product where the alternative may be in an aftermarket purchase by A&M demand their purchase business records for the two water pumps now requested in discovery.

[50.] There was also the possibility that someone at Circle Dodge remembered the vehicle and or the Owner but Plymouth Rock Insurance Co. would not send along any of that information, standing on a statute of limitation notice is where their claims adjustment staff doing a review attempted to sway the plaintiff off the beaten path, and possibly wear down the plaintiff, in delay after delay that Ms. Moormann's story differs somewhat from Plymouth Rock's version as an inconsistent statement stated this vehicle was from an internet sale may be true but did not divulge that owners information now suggesting it may have had a salvaged title that A&M purchased it at a used vehicle auction. Because the vehicle may have been submerged in water, causing the stench, they cleaned it up after the hurricane, but could not get rid of this odor where it is known that one of the previous owner's address was listed as Lakewood, New Jersey resident whom purchased it locally, was Ground Zero from Hurricane Sandy, either way, demands the car fax that Ms. Moormann ran and has held from the plaintiff in Privity, after stating there was nothing on it to see demands compensation in the amount of  $15,000,000.00 dollars.

## COUNT XXX

[51.] They admittedly have facts behind a prior accident, and the storm damage misleads the plaintiff by delaying truthful evaluations of his claim file by continually requesting Medical Records forms, they already received after having been sent the Medical Bills, in February 2016 now request the Medical release form again in February 2017 so they could receive that information directly from the Medical providers, closing out the claim file was based on incomplete medical information is a continuous Fraud, why make such a request if they were not going to use the information that could be obtained by their own inquiry they may have done so using these medical forms in what they now claim is their fair decision, obtained these medical release forms under these false pretenses otherwise why would Ms. Moorman state what Plymouth Rock discussed in the medical records with her now demands full compensation in the amount of $150,000,000.00 dollars.

## COUNT XXXI

[52.] The defendants Plymouth Rock continued to send along harassing notices regarding the plaintiff's rite's regarding the Statute of limitations, addressed as non-starter issues (2) years ago, but once the plaintiff called he was hit by such questions as "Is my vehicle in storage" but this claim was never about the plaintiff's vehicle, but rather defendants vehicle, in which she was told to stop using the vehicle by the plaintiff, cover it and place it in the back yard until the situation could be resolved such as the water pump replacement where it was replaced for a second time, when asked at the time of her purchase from the A&M auto salesperson, He stated the water pump had already been replaced, Plymouth Rock Ins. Co., knew this information but totally down played the $225.00 bill as no big deal, to the plaintiff even though the fluid that was leaking was a poisonous, toxic and deadly fluid, especially when inhaled, as the plaintiff has done, which demanded by the manufacture  immediate medical attention even when it served up cold as in some reported medical and legal cases, questions why all of these repairs that were made to the water side of this engine?

## COUNT XXXII

[53.] The defendants never considered any of the plaintiff's medical condition as a humane issue of someone becoming sickened from their negligence but rather a dollars and cents issue, in what the plaintiff could prove in a court of law, regarding a smell, has saved various evidence from the incident, such as a trip to the Emergency Room where the bills, that were sent on to his Medicare The red Christmas card given to the plaintiff by the defendant Ms. Moormann at the "Checkers" 01/02/16 the night of the event in which she had sat on it in her vehicle since before Christmas still has the stench of Death on it when it was first opened and when it was last opened, there is also a collection of hair and finger nail samples taken along with skin that had blistered, erupted containing water or bodily fluid, cause a trip to the Emergency Room at Newnan General Hospital EXHIBIT L.

[53.] This may have been from the attempt to clean up the vehicle, where they tried everything possible to rid the vehicle of this smell but nothing worked is why these vehicles belong as salvage for parts in junk yard but only made some form of a mustard gas in the attempt at neutralizing the ominous smell ?? Possibly from additional household chemicals being used in what is a deadly combination of poisonous chemicals, which constricts the ability to breathe properly and is a known toxin, causing a noticeable water blistering beneath the epidermis, in which the plaintiff sought medical treatment the argument here is that not any of these defendants have the sense to do what is right, and there is not a woman alive that would not try to clean a ominous noticeable smell or odor no one wants to be around demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XXXIII

[54.] The plaintiff awoke several days after the incident finding that the hair on his head had turned white overnight, a sure sign that poison was introduced to the body and entered his central nervous system (CNS) tremors as the hair has gone wild and or haywire, on various parts of his body, mostly on his fore arms and hands, the finger nails showed a sign of a rippling effect is something that forensic scientist would find in a case similar of heavy metal poisoning where the body shows various signs of ingesting toxic materials continued to cause vomiting.

[55.] The Plymouth Rock Ins. Co., contests every inch of their insureds liability as their responsibility, never once asked about any of exculpatory evidence or how the plaintiff was doing, but rather interested in what the doctors had found, in his blood tests, is a suspicious question? Where they had again ignored the plaintiffs letter on February 17, 2016 Most likely were receiving the plaintiffs medical information and just plain ignoring these treatments and sequence of events to prevent the application for benefits from processing submitted on 09/06/16.

[56.] The defendant Moormann has some basic or common knowledge about water treatment and purification, because she has an in ground swimming pool at home and cares for various species of aquatic creatures in a large fish tank, is exposed to chemicals that treat water such as Sodium Bi-Sulfate and Chlorine products that could be associated with the plaintiff's unexplained illness.

[57.] Defendant Moormann knew right off the bat that the air toxicity at her sons work was poisonous if inhaled, a harmful condition where this defendant immediately called the Toms River Police Dept., ¶45 has due care only for themselves, such as preventing her insurance rates from going up due to a claim filed against her negligence in which she has a medical background with a perfect knowledge about how water is balanced being the owner of an in ground swimming pool at her Beachwood, New Jersey home demands Compensation in the amount of $15,000,000.00 dollars

## COUNT XXXIV

[58.] On the morning of Sept 18, 2017 the plaintiff called Plymouth Rock Ins., Co., and spoke with the defendant Jillian Wagner, being surprised that she answered the telephone as the plaintiff had tried to call her for months after this incident always deflected the calls and only to get pushed on to her voice mail, or other Team players.

[59.] At the time of Ms. Wagner conversation she was asked for the name of the used car dealer ship in which Ms. Moormann had purchased her vehicle in question from ? Ms. Wagner contended that the plaintiff should have known this at that time. It is true he was with Ms. Moormann when she purchased the vehicle. It was explained that he had gone to the 7-11 next door for a soda, and that the business transaction was not really any of his business until he became sickened, 01/ 03/ 016, where she should have sent this information as requested several time by telephone and requests sent by certified mail, but choose to ignore this claim file demands compensation in the amount of $5,000,000.00 dollars.

21

## COUNT XXXV

[60.] It was stated that all the materials requested had been sent out to him by her claims department but he never received that information, by mail or by telephone. There has been no inspection report if Plymouth Rock. Ins., Co., had conducted one, and or any information gathered other than that of which Ms. Moormann initially supplied to the plaintiff, as she had stated she has read the car fax report from an on-line inquiry, said there was nothing on it that the plaintiff needed to see here, disputes her qualifications in products liability regarding automotive case [L]aw and was most likely told by the Plymouth Rock Ins.. Co., to stop all contact with the plaintiff.

[61.] Ms. Wagner at that time stated that the mechanic and or the A&M repair shop never knew about the vehicles condition. First this is an outright lie and cannot state what someone else knew can only state what she knows, it's just a cover up in a closed mouth conspiracy to protect the A&M used auto dealership, and has no supporting evidence, nor does their insured Ms. Moormann.

[62.] The plaintiffs argument here is that the seller A&M diagnostics of the vehicle stated directly to the defendant and the plaintiff that they had already change the water pump, and that the mini-van was road ready and set to go and that one of the ASE certified mechanics would have to have replaced anti-freeze back in the radiator system to compensate for the anti- freeze loss during the first water pump change, and further as requires to place the cars heater system on to recirculate the fluid in that heater system, and to use the same exact anti-freeze mentioned by Chrysler that was in the system and that is highly unlikely or doubtful, where the solution to the problem here is to flush out the entire cooling system and if they did not know that they would not be following the manufactures recommended instructions and that of a qualified ASE certified mechanical technician,  demands compensation in the amount of $15,000,000 dollars.

## COUNT XXXVI

[63.] The lack of care and lack of understanding seemed to have been never ending, right from Ms. Moormans wanting to know what the Hospital and or Doctors found in their blood tests, which had cause serious damage in the plaintiffs central nervous system causing a near death experience, has reacted with all of the plaintiff medications and bothered other health issues already bordered on serious to fatal operations at Cambridge Hospital Cambridge, Massachusetts had lost all of his blood and had to be reopened for a second surgery all in one day, where in this instance there are admissions but not any remorse because of the dollar amount involved.

[64.] There were several instances where Ms. Moorman interfered with the Plaintiff's cases filed at Trenton, New Jersey. One was concerning an RV Recreational vehicle fire at Toms River, Ocean County Marina in which a spark in the older (rv) set off an explosion from a junction box located in the forward part of the engine compartment even though the plaintiff had the High tension HEI distributor wire disconnected at the distributor cap, it ignited a fire killing his dog in which he ran back into the burning camper to save his dog and suffered 2nd and 3rd degree burns sending him by ambulance to Toms River Medical Center.

[65.] The case was against the administrative agencies for unlawfully removing the plaintiff By the United States Park Service and Ocean County administrative Offices among others for demanding that the plaintiff stop repairing a boat that had sunk in Super Storm Sandy. Since President Obama and Governor Christy had delivered speeches at Asbury Park, New Jersey before vowing to work together on the storm damage until all of these repairs have been made but on July 24, 2013 Both President Obama and Governor Christy made a declaration that all of the damage was fixed but that was a false statement totally and benignly manufactured for whatever reason sealed the plaintiff's fate. See photo EXHIBIT M & N.

[66.] This was not the first time, nor the last time Ms. Moorman had interfered with the plaintiff in a public forum, at Church she continued to ask the plaintiff in front of others if he was the one 37 years ago that stole her safe from her residence at 3 Spray Boulevard Neptune, New Jersey sent the Neptune Police Detectives to the plaintiff for questioning, in which Neptune Police determined that "Cowe" had no involvement, but that mostly likely the perpetrators had stayed in his Room number 5 where he worked at the Tower Motel located on Highway 35, Ocean Township New Jersey while he was away, continued to intimidate him after church services into some type of a loose confession.

[67.] Even after 37 years this crime would have been well over any statute of limitations and time would have absolved any man of such a crime, The plaintiff stated that he never had any motor vehicle problems in New Jersey and has a clean driving record and has never stolen anything ever, including anything from Ms. Moorman's household while they lived together in separate room, during her husband's incarceration for a robbery on the Jersey Shore a few years earlier at a convenience store serving 4 years as a participant.

[68.] Even the Old Time Automotive people threw innuendos at the plaintiff for an unknown reason, took sides with Ms. Moorman and sent insults against him when he found out that because of Ms. Moormann's negligence had his navel removed as an obstruction in healing from his 5th operation "That this only collected lint and that the plaintiff didn't need it" Being a joke at the plaintiffs expense also stated that he shouldn't have filed an insurance claim and drawn a complaint against her is now ban from the First Baptist Church in Forked River and cannot attend the Bible studies conducted on Wednesday nights is where the whole congregation is against the plaintiff.

[69.] In a loose conspiracy of events, Ms. Moormann invited the plaintiff back to her house for coffee after a Wednesday night Bible study long after her divorce, since she now had 2 additional hours to pass before going to work at midnight but she could never seem to shake the ex-husband from being in her garage working, he saw both vehicles pull up to the house and approached her, but she drove off, then coming up to the RV screaming how he wants to fight the plaintiff as he drove off the ex-husband chased the plaintiff down the road, as this was certainly an intimidating factor in having coffee elsewhere, especially where was not his home.

[70.] There is a certain degree of dishonestly in this case, Plymouth Rock Ins.,Co., requested medical release forms in which they had been sent in twice see supporting letters in the Exhibits. It is assumed that they had evaluated the medicals that were submitted in the claim file and that they shared this information with Ms. Moorman is why the plaintiff received the late night text then shortly afterwards the plaintiff was notified the claim file was now closed, for a lack of medicals even though Plymouth Rock was receiving the medicals all along and played it out as if they had never received them.

[71.] This case wasn't bad enough for the medical damages but the plaintiff suffered at the hands of Ms. Moorman religious beliefs when it became known that Dohokar Tsnaeve was convicted as guilty on all 30 counts in the Boston Marathon bombing, where Ms. Moormann plead with the plaintiff to spare his Life and the Jesus protects everyone and that as long as he was alive he should remain alive and that it was wrong to kill him, she was explained to that the plaintiff had nothing to do with that Juries decision nor any part of the sentence hearing held at Boston, Ma. as Ordered by George O'Toole J.D.C and that an apology made by the (BMB) now a convicted killer, would most likely shorten any appeals process, that the plaintiff should stop his exicution because it was immoral and became a more of a bizarre event as the defendant Moormann, may have held this against the plaintiff, in her religious belief as a good Christian woman but now asks where was Ms. Moorman when "Cowe" was so far injured in this life threatening situation, never once stood up against the violent ex-husband or asked how he was doing after the 5th & 6th surgery in which the plaintiff had been opened before and was doing fine but nothing like what Ms. Moormann has caused in medical damages, the photos speak for themselves, demands compensation in the amount of $150,000,000.00 dollars.

The plaintiff reserves the right to amend the Compliant.

The following statements are true and correct to the best of the plaintiff's knowledge, information and belief under the pains and penalty of perjury

*Neal Andrew Cowe*

Neal Andrew Cowe
1136 North Parkwood Dr.
Forest Park, Georgia 30297
1-732-853-9646

December 27, 2017
U.S.P.S. Priority mail