UNITED STATES DISTRICT COURT
DISTRICT OF CENTRAL NEW JERSEY

| | | |
|---|---|---|
| NEAL A. COWE | ) | |
|     PLAINTIFF | ) | |
|     V. | ) | Civil Action No.18-CV-00049 |
| JAYNE A. MOORMANN | ) | No. 18-49 |
| Melissa A. Frazer | ) | Peter G. Sheridan  U.S.D.J. |
| Administratrix | ) | Lois H. Goodman  U.S.M.J. |
| | ) | |
| A&M AUTO BROKERS | ) | |
| A&M DIAGNOSTICS | ) | |
| | ) | NEGLIGENCE |
| HIGH POINT PROPERTY | ) | |
| And CASUALTY d/b/a | ) | |
| HBP INSURANCE GROUP | ) | |
| | ) | |
| PLYMOUTH ROCK | ) | |
| ASSURANCE COMPANY | ) | |
| Of NEW JERSEY | ) | |
| JILLIAN WAGNER | ) | |
| (Individually)      Et Al; | ) | |
|     DEFENDANTS | ) | |

## AMENDED COMPLAINT

### THE PARTIES

[ 1.] Now comes the plaintiff in the above entitled action, request to take leave of this Honorable United States District Court : by Order of this Court to allow an Amended Complaint to be filed within (3o) day(s) of November 20, 2018 will move Under Langlois  V. Travelers Ins. Co.  401, F. App. 427, 11th Cir. (2010.)

[ 2.] The Plaintiff  Neal A. Cowe is a resident of Clayton County within the State of Georgia resides at 1136 No. Parkwood Dr. Forest Park, 30297 and having a temporary mailing address 9 Taylors Mills Rd. Post Office Box 24 Englishtown, New Jersey 07726 is a citizen of the United States of America.

[ 3.] The Defendant Jayne A. Moormann is now deceased party to this action, and was a resident within the County of Ocean located at 1108 Anchor Avenue Beachwood, New Jersey 08722 was a citizen of the United States of America, is represented by Mellissa A. Frazer 46 is also a citizen, 46 approved by this court as the administratrix of the Estate of Jayne A. Moormann.

[ 4.] The A&M Auto Brokers are located at 2034 West County Line Rd. Jackson, Township New Jersey 08527 d/b/a A&M Auto Diagnostics located at 2024 West County Line Rd. located within the same building in Jackson Township, New Jersey 08527, an office and (2) bay garage for mechanical repairs.

[ 5.] The Plymouth Rock Assurance Company is a business corporation with a home office located at 695 Atlantic Ave. Boston, Massachusetts 02111with local offices located at 331 Newman Springs Rd. Lincroft, New Jersey 07738 in the County of Monmouth at P.O. Box 901 and 902 Lincroft, 07738 D/B/A/ as High Point Property & Casualty d/b/a HPB insurance group having a home office located at 801 N. Elm St. High Point, North Carolina 27262 with local offices located 331 Newman Springs Rd. Red Bank, New Jersey 07701.

## BACKGROUND

[ 6.] On or about Saturday January 2, 2016 the defendant Jayne A. Moorman called the Plaintiff, Neal A. Cowe on her cell phone at 1:30 P.M. asking him if he would be able to meet her at 8:30 P.M. for something to eat, before her midnight work shift, at a fast food restaurant known as Checkers for takeout food only Route 37& Hooper Ave. Toms River, New Jersey 08753.

[ 7.] Since there is outside seating only at "Checker" they sat and ate in her newly purchased 2008 Dodge Caravan vehicle, that she had purchased from A&M Auto Brokers, which apparently A&M Diagnostics repaired to be road worthy dependable transportation. The plaintiff became sickened from a nauseous from a smell that was being emitted from the vehicles water pump that was repaired by A&M Auto the plaintiff is asking the Court for injunctive relief in actual damages against the Buyer Moormann and the Seller A&M Auto Brokers insurance carrier and Moormann's Insurer carrier for their combined Negligence.

# COUNT I

[ 8.] When the plaintiff entered Ms. Moormanns vehicle on January 2, 2016 he found that hot air from the vehicles heater system was focused directly upward, possibly in a dramatic fashion where the heater setting had been placed on the bi-level Up/Down setting, then asked plaintiff if he smelled a stench associated with the vehicle gasoline and antifreeze fumes that were coming from the heater core system.

[ 9.]  Ms. Moormann in a dramatic fashion turned the heater system on full blast, it was blowing right into the plaintiff's face as he had entered the vehicle, this force of hot air smelling of gasoline and antifreeze had continued while he was eating, he then became dizzy and was unable to breathe properly developed a headache, a sore throat, became disoriented, nauseous by the sickening smell coming vehicles interior, overwhelmed him, which affected his thinking process Exhibit 1.

[10.] While the vehicles heater unit was on, it could also be described as somewhat of a moldy stench possibly coming from the passenger's side floor area, assuming that it may have been previously wet, was now drying out since the heating system had not been run during the summer months, and because this vehicle was sitting idle for a while, became and unanticipated peril to an ordinary lay person, except it should have been tested by a trained mechanic this would have been a noticeable danger, disclosed to a buyer, demands compensation in damages in the amount of $15,000,000.00 dollars.

## COUNT II

[11.] Due to A&M's negligent repairs, in not following the manufactures procedures (Org. Comp.) ¶17, or public warning regarding this vehicle a 2008 Dodge Caravan made by Chrysler Corp. the plaintiff had become intoxicated from Ethylene Glycol fumes leaking from this used vehicle having being repaired in an incomplete manner, by not testing the pressure of antifreeze strength of proper level and if the system was leaking Id..

[12.] The Plaintiff had become (1) disoriented in his state of mind, (2) was overwhelmed by ethylene glycol fumes in the air, (3)there was an odor of gasoline also being emitted from this heater system through the air vents A&M's mechanic/salesman should have known about, while working on the water pump, also the an odor of gasoline was present, should have been eventually recognized when starting the vehicle, negligent demands compensation for medical expenses in the amount of $168.114.00 dollars.

## COUNT III

[13.] At some point during the 01/02/16 dinner at "Checkers" the plaintiff asked the defendant what she had done about this for the past month or so. Ms. Moormann answered that she had "Opened her Car Windows" as she drove, to work in the cold winter air, to rid the vehicle of the horrid smell, her negligence in manner is in knowing this condition existed, owed a duty to her passenger and to those who entering this vehicle no caution was given by her when this well-known condition became prevalent, that did not dissipate the odors by just ignoring it, is her negligent duty and not a proper remedy for this type of serious problem Id. Demands compensation in the amount of $15,000,000.00 dollars.

4

# COUNT IV

[14.] In the first instance defendant Moormann was negligent in her due diligence of a certain degree of care owed to her vehicles passengers in notifying A&M Auto/Diagnostics when she had discovered and realized that her newly purchased 2008 Dodge Caravan had a noxious smell to it, along with the antifreeze and gasoline coming from the heater core as she used it in the vehicle as she traveled to work at night, she needed a dependable vehicle and heat is considered to be one of those essential items that persons would depend on in the winter months especially in January.

[15.] Now that this condition was known to Ms. Moormann she owed the Plaintiff a higher degree of care under New Jersey State law N.J. 2A. 5: 5: 1 knowing about this dangerous toxic condition existing, failed to give any warning or assistance for her passenger to bring the plaintiff to the Emergency Room, when he had requested a ride from her to the Toms River Community Hospital also located on Rte. 37 about mile away in the general direction of her line of travel, he asked to just drop him off at the Hospital (ER).

[16.] Defendant Moormann at some point said she had eventually notified the A&M Auto Brokers/Diagnostics some weeks later[1] brought her vehicle in for service repairs on the heater system from where she had purchased it, they told her there was no written warrantee given with her sale either express or implied and without her making an appointment, A&M Auto rejected her first request to inspect the vehicle Id., or identify the odors, but continued to drive to and from work and around town after being told by the plaintiff to "Park it and Cover it" so it could be returned, to A&M Auto Broker/Diagnostics refused to adhere to this sound advice, demands compensation in the amount of $150,000.000.00 dollars.

---

[1] The repair date is unknown and its only reference is that the plaintiff received a letter from Plymouth Rock Assurance Co. (PRAC) in April 2016 four months later as to the admission in the causation of Antifreeze and Gasoline fumes, and that the repairs were being made to her vehicle.

## COUNT V

[17.] The Plaintiff was ultimately exposed to a rated class of 80 PPM (Parts per Million) classified by the Environmental Protection Agency (E.P.A.) located at 401 East State St. Trenton, New Jersey 08608 Standards Level (A) RED ZONE by the symptoms he complained about and had displayed at "Checkers" dinner and in that "Cowe" had been exposed to some known chemicals and some unknown contaminates to as they ate in Moormanns tightly closed vehicle, Exhibit 2.

[18.] The side effects of breathing Anti-Freeze fumes dated July 27, 2017 Page (2) general information, States that First Responders should use a NIOSH-Certified Chemical, Biological, Radiological, Nuclear (CBRN) Self Contained breathing Apparatus (SCBA) which required with a red zone Level (A) Protective suit when entering an area with an Unknown Contaminate or when entering an area that has high concentration of contaminates that are unknown, suggests using noxitril gloves in this type of exposer level, Exhibit 3.

[19.] Defendant Moormann had negligently refused him any due care by driving around after eating then dinner with her windows open only made him more ill as she continued to refuse to bring him in for any type medical care, only made him upset and his mental state of mind deteriorated and this condition began worsen of being more dizzy and was so impaired he could not operate his own Motor Vehicle, Id.

[20.] The exposure time is an essential issue, and had become a Critical factor after inhaling unknown toxins along with (2) known toxic chemicals exposed to the smell from her interior, by HAZMAT (hazardous materials) Standards personal will not be allowed to enter an area of unknown toxic levels unless they are completely covered by protective suits equipped and breathing regulator, with rubber gloves, a precaution used with known and unknown chemical vapors present the plaintiff was subject too, demands compensation in the amount of $15,000,000.000 dollars.

## COUNT VI

[21.] Defendant Moormann was trained as a professional in the care of elderly patients should have recognized the signs of a poisonous intoxication from her employment skills in the Medical field (occupation) such as (i.e.) a patient has overdosed or shown signs of a difficulty in breathing, being somewhat labored, positively left the plaintiff without any medical assistance drove away, falsely claiming that she would be late for work, the plaintiff knew was incorrect.

[22.] This break down in the friendship came when it was realized that the defendant didn't seem to care anything about the plaintiff becoming ill or his obvious signs of sickness, by her actions and her false statement since "Cowe" knows that her work scheduled hours from her Contract Employer would show that her earlier work employment location to her then current work place location in Barnegat Bay had changed to Stafford Twp.

[23.] Ms. Moormanns contract had been changed to Stafford Township which is a (15 minutes travel time extra) along with her later starting time, of (1) hour being from 11:00 P.M. to 12:00 P.M. had been changed a few weeks earlier, by her Medical contract shop located in Brick Township, New Jersey, would have then allowed her approximately (45) minutes difference in time, which is enough time to drop the plaintiff off at the Community Hospital (ER) (5) minutes away Id.

## COUNT VII

[24.] The Plymouth Rock Assurance. Co., (PRAC) was apparently Moormann's insurance carrier but is still unknown[2] at this time, they had been notified within the State of New Jersey's time frame rules of reporting an incident or an accident and told about this antifreeze & gasoline condition, had falsely and negligently stated that when the Raritan Bay Emergency Room bill came in, from the plaintiff they would they would pay for the plaintiff's Emergency Room Services, Id., but was paid by Medicare the plaintiff's medical carrier.

---

[2] Plymouth Rock Assurance Company (PRAC) apparently issues insurance to various in investment groups, there could be a host of any one of many companies i.e. New Jersey Teachers assoc., Palisades, Palisades preferred, or Twin Lights that may have carried her automobile insurance coverage, High Point Property & Casualty was known an underwriter now claims responsibility, by stepping into the shoes of the original insurance carrier.

[25.] When the plaintiff's (ER) bill arrived he forward it to (Tamara's Group)
a claims department at PRAC but discovered that it was for $19,000.00,
refused to make even a negotiated payment and referred this bill to the plaintiffs
insurance company GEICO, Governments Employees Insurance Company, since
this incident had also been reported in a timely manner to them, Moormanns P.I.P.
policy was sufficient and wholly adequate in covering this expense, demands
compensation of $19,000.00 be paid out to the Coordinated Benefit Recovery Act,
(COBRA.)

## COUNT VIII

[26.] The plaintiff's insurance carrier (GEICO) Government Employee's Insurance
Company had been promptly notified but refused even the timely reporting
of the incident, GEICO stated that this incident didn't happen in the plaintiff's
vehicle and it was not the plaintiff's vehicle that made him sick, would not accept
any liability, but stated they felt it was clearly the responsibility of (PRAC) since
they apparently insured Ms. Moormann's vehicle, but is a disputed fact.

[27.] However Plymouth Rock Assurance Co. PRAC claims department told the
Plaintiff that they would have their claims department inspect the vehicle to get to
the bottom of what had caused his illness, so that future medical attention could be
given, but they only have delayed and continued to send letters of a denied medical
claim, but did not work on the plaintiff's claim file was their (PRAC) negligence as
told him they would and that they were going to send along their finding in a
report, but never did, demands compensation in the amount of $5000,000.00
dollars.

[28.] Their PRAC automobile claims adjustment department never did any of what
they said they were going to do, even after an admission of knowing this condition
existed, writing letters admittedly knowing about antifreeze fumes the a faulty
water pump had caused, along with the replacement of a defective O-Ring,
emitting gasoline vapors into the vehicle, which by their words deemed to be a
source of known contaminates entering the vehicle, shows further negligence, after
knowing these facts never examined her vehicle, but have somehow identified
mechanical repairs made on the vehicle by A&M as a root cause of vapors entering
into the vehicle, demands compensation in the amount of $150,000,000.00 dollars.

8

# COUNT IX

[29.] It has become known that the Chrysler Dodge Caravan "Town & Country" models throughout the years have had many manufactures recalls recognized by numerous first time buyers, where customers were notified regarding the defective (steel) coolant lines which contains antifreeze that ran under the passenger's side floor area of the 2002 through the 2010 year Chrysler & Dodge vehicle models are part of a large group voluntary recall in which a fluid system such as antifreeze is required to be checked for its resistant strength to prevent freezing and pressure tested N.J.S.12A:2-313 is the sellers A&M's breach of express warrantee to repair or replace known defective goods.

[30.] It has been documented that where these antifreeze pipe lines have slowly rotted out after only a few years of operation due to salt exposure in the Northeast due to the salt treatment of the roads during winter, the pipes located on the under carriage have no protection from outside exposer, being under the vehicle, have developed from the elements small abrasions or pinhole leaks in the heater pipe line and under pressure sprayed out hot antifreeze liquid on exhaust pipes and became toxic fumes as the vehicles were driven around.

[31.] The elements of winter are harsh to the under carriage of a vehicle, that the Solution made by Chrysler Corporation was to change the antifreeze line which was found to have leaked from below the passenger's side foot area from a steel line was now modified by the manufacture to an Aluminum pipe line, available also in (after market) purchases[3] where aluminum disburses heat in the cooling system more evenly and dissipates the engines hot contaminate or liquid more quickly and is less corrosive to both the inside antifreeze pipe line and corrosion on the outside of the coolant line from the exposure of the elements of road salt, mud, rain ice and snow, overnight freezing conditions, A&M Auto Broker/Diagnostics should have known, and could have known with any due diligence, demands compensation in the amount of $15,000,000.00 dollars

---

[3] Most local automobile parts stores would have in stock replacement tubes and antifreeze lines or pipes in stock or could be delivered within (1) one or (2) business days so replacement parts could be made quick & easy, with a minimal delays to their customers.

## COUNT X

[32.] Defendant Moormann stated that she had smelled something funny after using the heater system for the first time in late November Id. since the 2015 weather had been seasonally warm, her heater system was not initially used in the vehicle. However the vehicle needed to be Registered & Titled so she had to return to the A&M Auto Brokers and Diagnostics garage to receive her vehicles inspection sticker where she discussed these emission odor or stench with A&M, but they approved the faulty vehicle as road worthy is also criminal fraud, tampering with the New Jersey vehicle inspection sticker process.

[33.] The plaintiff's contention here is Moormann returned to A&M Auto for her inspection sticker the following week, the mechanic placed a New Jersey inspection sticker on the vehicle knowing that the vehicle repairs were not up to (ASE) standards had control over the licensed inspection a process, claimed that they didn't have time to look at her vehicle they were too busy to determine a causation, of a serious complaint but may have or should have had knowledge to the contrary, passed the vehicle inspection with flying colors, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XI

[34.] The defendant Moormann was additionally Negligent by failing to further follow up with an appointment within a reasonable amount of time, with now allowing A&M Auto/Diagnostics extra time, to conjure up a perfume scheme to delay in taking any of the corrective action necessary after Moormann becoming aware of this condition, should have realized this was a very toxic condition she was easily deterred and or put off, and she had told the plaintiff that she asked everyone in her inner circle of friends, but failed to warn anyone who rode with her of a dangerous condition in which she could not earn extra money driving for the Uber company as a taxi, was specifically why she purchased a newer vehicle Id..

[35.] The inner circle of friends around her, including the Plaintiff, but definitely had asked a church member who is a qualified ASE certified mechanic Gavin Cox about her vehicles condition assumed that he told her to bring it in to where he works, for a proper inspection of the vehicle, obviously had purchased a vehicle that she could not safely rely on, eventually putting her back into her old 2006 Dodge mini-van, as she is also a victim of A&M's Negligent conduct, demands compensation in the amount of $500,000.00 dollars.

## COUNT XII

[36.] The argument here is that the broker A&M Auto Brokers were aware of this condition from a water pump they claimed that they had already changed in a statement made by them when the vehicle was initially being looked over, before the date of purchase. The additional arguments here are that A&M Diagnostic's would have had to have flushed the heater system out under Pressure, and then run the vehicle's engine up to its normal operating temperature, with the Heater core on full blast, as recommended by Chrysler is well known to mechanic to recirculate newly replaced antifreeze, failed both times to hence comport to the manufactures instructions, should have their repair license revoked Id.

[37.] It is only assumed that the same type of antifreeze was used in both instances as the proper replacement since there are two types of antifreeze, its precaution is that it is never to be mixed with one another (1) being ethylene glycol normally is Green in color (identified as a normal popular type) and the other (2) Propylene glycol that is Orange in color is also used in newer model type vehicle Radiator & Heater core systems, the latter being more permeated but less toxic in nature but its precaution is that it should never be carelessly discarded and certainly not mixed in its application with the ethylene glycol type systems Id, demands compensation In the amount of $15,000,000.00 dollars

11

## COUNT XIII

[38.] An qualified ASE certified mechanic would have ensure the system coolant was at proper (operating temperature) and proper fluid level height, so that a customer would not drive away overheating their engine, is evident that A&M did not follow manufactures recommended guidelines in this procedures, nor did they use the manufactures (OME) the Original Manufactures Equipment, purchased at a certified Dodge Dealership,[4] cannot produce any records for any water pumps except in an aftermarket setting (local parts store) purchases, not sold by Circle Dodge where Moormann complained her had overheat traveling in a few inches of snow as extra pressure was applied, to the system, her CV axles also went out.

[39.] An Authorized Chrysler, Dodge Dealership manual was made available to determine the correct and ASE mechanical procedure's in which to follow, as this possibly would have made known the cause of an antifreeze leakage and the awful stench in this particular vehicle may have been sitting for a while instead of covering up the issues with perfume as a fraudulent act, to deceive the customer would be related to covering up the smell or it may have become known the existence of the defective original product submitted and shown as Exhibit D & E in the Original Complaint Id., demand compensation in the amount of $150,000,00.00 dollars

## COUNT XIV

[40.] This is the proximate cause of the Plaintiff's, becoming sick from antifreeze intoxication is because antifreeze it contains Alcohol & Methane that by the inhalation of these fumes had caused this dangerous condition in which several obvious symptoms, are commonly known in developing a severe cough and vomiting in which Dr. Wang of Raritan Bay Medical Center (RBMC) determined by a computerized axial tomography (CAT SCAN) had caused a severe herniation of "Cowe's" bowel area after having been examined & correctly diagnosed in their Emergency Room on 1/03/16 had a reaction to the Oxygen that was administered far too late in the Emergency Room visit.

---

[4] A&M Auto/Diagnostics would have been aware of Chryslers recall notice regarding this particular type of vehicle which became widely known since its antifreeze leaks and defective heater core systems were being replaced for free which was not under a government recall but voluntary service under Chrysler & Dodge mini-vans recalls.

[41.] The second CAT SCAN which was done on the plaintiffs brain, did not reveal any abnormalities, but knew that the chemical compounds NDSA Gasoline antifreeze had entered into his blood stream, because of the direct feeling of becoming Ill contends he never received any of this critical information, so he could receive proper medical treatment as recommended in Standard Procedures for such an exposure, before any of the damages set in to his (CNS) Central Nervous System that had been neglected to be reported to him, by Jillian Wagner Senior Claims adjusted at Plymouth Rock Assurance Company.

[42.] The questions asked of PRAC by the plaintiff are as such, (1) where was the vehicle prior to this internet purchase., (2) whom were the previous owner(s), and how long had this vehicle been sitting unregistered and uninsured, in which all of this information was not overly burdensome and had been requested by Certified Mail (RRR) return receipt requests was signed for by (PRAC) became unanswered and when discussed over the telephone were evasive and misled the plaintiff in his calls made to Plymouth Rock Assurance Co. (3) as to whom sold the vehicle to Ms. Moormann (4) where were A&M located, (5) has PRAC examined this vehicle (6) had this vehicle previous coolant system service in the past and if had extended warrantee coverage.

[43.] This information was conveniently concealed from him, including the name of A&M's proper business name, the internet seller (owner), or how long the vehicle had been parked on A&M's lot where the Plaintiff has suffered extensive physical exhaustion and medical damage(s) from (3) years of unnecessary delays in waiting for any of these important answers,[5] demands compensation in the amount of $150,000,000.00 dollars.

---

[5] PRAC has never been forth coming to the plaintiff to receive any prescribed form of treatment to be given since his Doctors are unaware of just type of antifreeze made him sick and amounts of gasoline that were inhaled, Cowe had complained in the original complaint at ¶63 that his Heart & blood pressure medication are found to contain Glycol a Chemical bonding agent found on both of his medication Losartan & Carvedilol continues to be intoxicated by the medications administered and ingested known as beta blockers, prescribed by physicians.

# COUNT XV

[44.] The food that had been eaten at "Checker's" never came back up, rules out a food borne illness, claims ingesting glycol fumes, is a normal delayed reaction to the exposer of glycol when he drank at 4 A.M., it had entered his blood steam overnight since Moormann never became sickened by Checkers she became use to the smell of stench on her clothing which was a saturated odor similar to that of the vehicle, is poor personal hygiene, in not taken any timely action a factor to her contributory negligence.

[45.] Defendant Moormann claimed she was not sickened; even though the plaintiff and she had eaten the same type prepared foods, (sandwiches to go) cannot blame The "Checkers" for the Smell of antifreeze or Gasoline, fumes leaking into the vehicle's cabin area along with the moldy stench of coming from the Defendants motor vehicle heater core system.

[46.] Because the safety and operating condition of the defendant's motor vehicle is based on the reliance of the A&M Auto Brokers/Diagnostics mechanics words and is beyond any of the restaurants "Checkers" control, as you could drive up to the take out window, and leave with your food order that you have placed, Checkers cannot be held liable for the performance or condition of their customer's vehicle, or for sitting in their parking lot in Moormanns vehicle consuming food.

[47.] The plaintiff Cowe, holds defendant Moormann responsible in tort liability as the different odor(s) & issues were ongoing for weeks produced the 01/02/16 walk up window receipt as WU125 demands that A&M Auto Brokers & Diagnostics be held severely and jointly liable in their combined negligence from allowing the known defects by a previous sellers is why they sold the vehicle A&M preformed shoddy repairs, is faulty in the vehicles underlying condition should have been known was ignored all along as safety issues as stated in the manufactures voluntary recall, demands compensation for his medical expenses $168,114.00.

14

## COUNT XVI

[48.] At that dinner, the defendant stated; "She was driving around for weeks with the all of the windows wide open with the heater system on to relieve this horrid smell inside of her vehicle, but was now use to the odor. She was possibly slowly being poisoned by her own vehicle additionally negligent because this was not a proper applicable solution to the main problem, after mentioning this to a friend she took it to a repair garage, to be inspected, by others employed at the "Old Time Automotive Co.," located at 730 Atlantic City Blvd. U.S. Highway Route 9, Lanoka Harbor, New Jersey,

[49.] Ms. Moormann found a mechanical garage that may have given her a favorable evaluation as to the causation of the smell conditions but refused to pay for any of the mechanics time for an inspection service, best to the plaintiff's knowledge and belief she apparently drove away is her contributory negligence knowing this condition exists, but had not been properly identified or repaired when the opportunity presented itself, and that was before plaintiff became ill, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XVII

[50.] Defendant Moormann told the plaintiff at the 01/02/16 dinner that having found out that she had to pay for her vehicle to be looked at left the "Old time Automotive" without her vehicle being inspected failed to get an affirmative answer or have this condition corrected continued to drive around without this safety issue unresolved, even after the plaintiff complained about becoming Ill, Exhibit 1, cited the "Checkers" location as the cause of carbon monoxide poisoning from being in the closed vehicle, doctors are acutely aware of such cases From Emergency Room visits regarding accumulated toxic fumes from both the Automobile and homes in the winter time.

[51.] Because this is a used vehicle being (8) years old is not covered by an A&M Auto Brokers warrantee at this point in time, from its several resale's a manufactures related warrantee issue of (5) years has expired, but the negligence that went on even long after the plaintiff became Ill, became month after month even long after he had set up a claim file number with PRAC, regarding past ownership of the vehicle and its sorted history, which can be deciphered as shown in Exhibit 4.

[52.] The plaintiff only needs the last (8) digits of the (V.I.N.) Vehicle Identification Number so the Circle Dodge Dealership where it was originally purchased from could identify the vehicles service records, or any Chrysler & Dodge dealership nationwide is (PRAC) & Moormanns combined negligence, (1) if they have knowledge of the water pump changes after the claims adjuster dept. under Jillian Wagner had failed to inspect the vehicle or (2) submit a preliminary inspection report regarding this vehicle's maintenance history information, where current findings are available to them, PRAC, had initially stated and agreed upon, and went along with, the Car Fax Report would become available which they both agreed upon releasing the exculpatory evidence remains to be seen demands compensation in the amount of $500,000.00 dollars,

## COUNT XVIII

[53.] Defendant Moormann stated to the plaintiff when she was called on the telephone that she and a friend[6] had run a Car Fax on-line on her vehicle, disclosed that the Car Fax paper trail inquiry led her to Circle Dodge of Lakewood, N.J. is how the plaintiff found out where the Manufactures Statement of Origin (MSO) Originated from, but she took no action to speak to them or report this incident in a timely manner as required by law within (5) days in her claim file statement to her Insurance Company being Plymouth Rock Assurance Co., Lincroft, New Jersey.

---

[6] The defendant Moormann had a difficult time in achieving a Car Fax Report, because she found out in-order to so On-line there is a $39.00 fee to process the information in which she was reluctant to pay for it so she found a friend apparently from her employment contract shop who used the Car Fax Report system on somewhat of a regular basis, Moormann received information regarding the previous owners, but told the plaintiff "There was nothing to See here," but the plaintiff disagrees and suggested to contact the previous owners, maybe someone knew of an incident regarding the vehicle, and its whereabouts during Super Storm Sandy 10/29/13.

[54.] The plaintiff had called the Plymouth Rock Assurance Co. where after his notification a claim file was set up with the numbers being 077501427975   by Rebecca Kennedy, a PRAC claims adjuster as she discussed an open medical claim file, PRAC would look into and where to submit Hospital bills along with the Doctors medical reports to the senior claims insurance supervisor Jillian Wagner who would then submit these bills but was then diverted off to their claim adjusters to reference this issue on a team called Tamara, neglected to mentioned High Point Property & Casualty is a responsible party to Moormann's insurance policy.

[55.]   There were periodic letters sent from Plymouth Rock Assurance Co., signed By Jillian Wagner which had continued to remind the plaintiff about the running (2) year Statute of Limitations, where these type of form letters gave no information and came to be harassing non-sense, since PRAC. had no intention of addressing the plaintiffs letters requesting information, that pertained directly to his claim file.

[56.] There was always one delayed for one reason or another, and have never responded to any of the issues at hand so the plaintiff could receive medical help in any manner as to identify any type of chemicals including one that may have been a glycol, or unknown Poly glycol base had written letters that went totally unanswered the plaintiff had possibly carbon monoxide poisoning entered his blood steam suffered actually from glycol intoxication and was extremely cooperated filling out for them an application for P.I.P benefits which PRAC said is a normal procedure, under no fault insurance regulations, left Medicare with the bill.

[57.] At their own suggestion (PRAC) said that this would speed things up in a medical claim file which they should now, have no excuse of any explanation for not reviewing a medical claim that they have been given free and easy access to for the evaluation, it was also stated by (PRAC) that they have to receive medical information directly from the source in making medical payments would have to be sent directly to the subscribing Hospitals & Doctors, were promptly sent the full an open ended medical release form they said that they had received, but did not explore into the medical file is their own negligent handling of this claim.

17

[58.] The Plymouth Rock Assurance, Co., took no further action in working on the plaintiffs medical claim, as it sat for (2) years for a proper determination of the causation or for any treatment of his illness. At one point in time 04/04/16 PRAC sent along a (2) letters admitting knowledge to a Gasoline leak claiming that the incident had been related to a faulty fuel injector O-Ring leaking, and replacement of a fuel intake Manifold Gasket, did not truthfully and accurately access the correct amount in this vehicles repair costs, failed to give the benefit of the doubt to the plaintiff in a well document claim file any short term or prospective relief, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XIX

[59.] This is also where the engine oil and antifreeze may have leaked into the radiator back up canister, as this had done in her previous (same type) vehicle in a separate systems mixing (Water) (Oil) (Air & Fuel) relied on the A&M's Auto mechanics word, but that it may have been only cosmetically repaired by them to look nice at their garage, but in reality possibly was a product of the [L]emon [L]aw after having been told at the initial inspection of the vehicle extensive repairs as the plaintiff listened to Moormann questions and the mechanics answers before her purchase as the plaintiff looked on, but never once touched the vehicle.

[60.] The statement was that all the fuel injectors in the engine had been replaced the water pump was now new, along with the serpentine belt, the disc brakes had been done over, the brake rotors recut, said they installed new brake pads it all looked shiny and new that the CV axel joints in the front drive train  had been replaced as stated by the A&M mechanic/salesman prior to the delivery date of Ms. Moormann's $4,000.00 dollar purchase.

[61.] The defendant asked "Cowe" what could be wrong with the vehicle in such a pristine condition while the plaintiff had listened in on their conversation as a witness, made text notes with his cell phone, as to the A&M Diagnostics mechanics/salesman's statements, she asked the plaintiff again what could be wrong with it, and soon after she discovered that there was quite a bit wrong with it, including faulty emissions, from carbon monoxide which is a by-product of the combustion engine while running, antifreeze, gasoline and a general stench when her heater was used.

[62.] The plaintiff stated she should look into purchasing a new vehicle, he said "buy it and you will soon find out" what could possible go wrong with a second hand or third hand used vehicle, that has a shady Title not available at the time of her purchase, no inspection sticker, but A&M could just slap on, at their own discretion, a vehicle that looks to be in such great shape, (body wise) little did the plaintiff know this would be a life threating experience for him, from mechanical defects that were not disclosed to the plaintiff or the defendant at any point.

[63.] Because there was no warrantee with the vehicle is was more than a suspicious deal in which there no recourse if she relied on the mechanic/salesman's word where the plaintiff also relied on these statements made to them, as a dependable vehicle in which he was dependent to be driven around by Moormann for his grocery shopping and other general activities such as going to church Wednesday evenings and Sundays mornings.

[64.] At some point in time the plaintiff found the prior statements made by A&M to be more than questionable practice in false statements, since various components began falling apart that supposedly had been replaced, questions if there was any prior knowledge covering up the history of the internet party making the sale through A&M Auto would have deflected their responsibility of the internet vehicle sale, was now once removed from A&M Auto Brokers for a particular reason as they (A&M) didn't Title this vehicle in their name or have the Title when Moormann paid A&M Auto Brokers the cash Id.,

[65.] Ms. Moormann expected a Title so she could insure her vehicle and drive it home to Beachwood, N.J. as we all expect a Title when paying in full for a used Vehicle expected a Title, but received something totally different from A&M as they stated something was being corrected on the Title, Id. that this may have been the tip off a salvaged Title vehicle and that this was being pawned off on her as a woman and unsuspecting customer demands compensation in the amount of $5,000,000.00 dollars.

## COUNT XX

[66.] Plymouth Rocks Assurance Co., sent letters which indicated High Point Property & Casualty (HPP&C) as an underwriter on their letter head, but also indicated a faulty fuel injector O-Ring and an intake manifold gasket may have been leaking into the cabin area of the vehicle prior to this sale was now repaired by A&M Diagnostics mechanic (PRAC) claims adjusters then had stated; "That this smell condition of Gasoline & antifreeze couldn't have made the plaintiff ill" disputes every word[7] of what (PRAC) has Said here: contends that this could have been a defective Catalytic converter which all cars are equipped with, an exhaust muffler, or a defective exhaust pipe after (8) years on the road negligently over looked all of these possibilities.

[67.] The (PRAC) insures hundreds of thousands if not millions of motor vehicles each year, through their other various companies including (HPP&C) finds this aspect from automobile insurers deeply disturbing and troubling as not following the law (NJPLA) New Jersey Products Liability Act or the Manufactures (Chryslers) Products Liability procedural warning after the admission ¶ 17 original complaint, A&Ms attorney stated he had no knowledge of (PRAC) admission, is false and misleading since they were served a sufficient complaint which contains enough information given to the defendants as a fair notice of the claims against them, specific facts are not necessary FRCP 8, 28 U.S.C.A., demands compensation in the amount of $15,000,000.00 dollars.

---

[7] The plaintiff contends that gasoline vapors will make anyone sick if exposed to them for a prolonged period of time and that (benzene) is highly poisonous and has cancer causing agents contained within it as a combustion fuel And that leaking antifreeze poses the same threat to humans and the combination of the Two can become deadly.

## COUNT XXI

[68.] The fact that A&M's disregarding Chrysler Corp. (recall) on this particular vehicle is simply astounding where it is plainly written by the manufactures statements, and every "Chilton Mechanics Manuel" in reference that corrosion will occur at the junction of the gaskets, metal pipes and or rubber hose couplings causing a leak wetting different areas of the vehicle including the unseen undercarriage as an element of caution stated in their recommended procedures, was more likely than not disregarded, but PRAC had enough knowledge to write a letter of admission in defense of A&M's mechanical water pump/ O-ring changes while (HPP&C) remains silent, because any information released is damaging Id.

[69.] The (PRAC) states that it is without any inspection report, from A&M or a preliminary investigation or a simple claims department liability Insurance company investigation cannot support their claim assertion, regarding a sickness from fumes or vapor where this relevant information is readily available on the internet free have refused to send along any investigative results requested in Feb. 2016 & March 2017 certified letters results that may have been found by any qualified (ASE) mechanics is all of (PRAC) bad faith, in not allowing an inspection process by the plaintiff's mechanical expert or any expert at all, in the discovery process.

[70.] Plymouth Rock Assurance Co., had negligently closed "Cowe's" claim file, stating they were lacking his medical reports after having requesting a medical form be filled out the plaintiff sent in his completed medical release form to (PRAC) as they had requested so (PRAC) could receive this information directly (Orig. Complt.) ¶18 never worked on his existing claim file is found to be their own negligent handling of the plaintiff's medical claim file complied with and supplied reports from his medical providers Id., demands compensation in the amount of &150,000,000.00 dollars.

## COUNT XXII

[71.] PRAC) stated they had never inquired into his medical treatments even though they had the ability to do so, but rather refused any P.I.P. payment and cannot show all of their liability was at some point placed on High Point (HPP&C) only after a suit of Negligence was filed also deflect the liability that the plaintiff had this information supplied by Jillian Wagner slowed up his investigative process and medical recovery had all of the facts wrong now that the facts have slowly become known deflects their own negligence, off on another party for a dismissal.

[72.] The defendants negligence has always been greater than the plaintiff since he fully complied with the requests from Jillian Wagner who can only stand on the A&M Auto Diagnostics mechanical statements after making admissions of their failure to comply with their extent of liability, having no firsthand information and being misled demands compensation in the amount of $500,000.00 dollars

## COUNT XXIII

[73.] Defendant Moormann had specifically been told by A&M's mechanic as she had relied on his word that all of the vehicles critical components had been replaced or had been gone over as she inspected the vehicle inside and out lifting this and touching that, as the plaintiff listened in to this conversation, is where he had also relied on the mechanics/salesman's word, as the plaintiff sent a cell phone text messages to the Gavin Cox while he was at his work, left the A&M sales lot for a test drive, assuming she would like the newer vehicle, and be hired by Uber taxi service since their requirement was no vehicle older than (10) years old which at that time 2008 was a (7) year(s) old vehicle.

[74.] Gavin Cox knowing he had already repaired Moormanns 2006 Dodge Caravan for the exact same problem, (oil & water) had been mixing in the Engine between the cooling system radiator fluid and engine oil had been backing up into the vehicles overflow container had returned a text stating that "He didn't want any part of the transaction knowledge" because the purchased seemed to be too Good to be True and Leary of the fact that the vehicle was without any warrantee said : the plaintiff Neal Cowe and Defendant Jayne Moormann would become enemies over the vehicle, is a statement of truth, and the parties were "On Their Own."

[75.] Even though A&M continually stated these repairs had been made before her purchase. The plaintiff argues that if no one knew that it would take so much substantial mechanical repair work effort by the defendant Moormann and her insurance company to get all of these things fixed again after the purchase then there is more than a certain likelihood or degree of fraud on A&M's part and that their ASE mechanical qualifications are definitely in question as to their A&M's deceptive acts of fraud is contributory to their negligence demands reasonable amount of compensation of $500,000.00 dollars.

## COUNT XXIV

[76.] Then there is the second Water Pump replacement which was ongoing issue during the 2016 claim file period because this contributed or had cause the inital smell by the antifreeze leaking into the cabin area, this is possibly why the vehicle was up for sale by the previous owner that has already been stated, could have become sickened and or may have grown tired of replacing the components and repair bills which Moormann was going through by (PRAC) admission letters they stated it needed be replaced again by A&M Diagnostics, allowing them a first opportunity to make the repair(s) and questions if there was no warrantee then by whom the repair bill paid by at A&M's garage and why is (PRAC) intervening for Moormanns repair bills.

[77.] The (PRAC) said they would now receive additional Medical reports from the Neurology evaluation reports directly after the plaintiff had received another CAT SCAN on his Brain to verify the Doctors assessment and costs of the visits wrote letters that continued to have a delay on the claim file and that (PRAC) eventually dumped all of these bills on the plaintiff's Medicare as his their responsibility, as the Auto insures quite frequently do, cannot enter into any Settlement Agreement without these medical expenses being reimbursed to (COBRA) Coordinated Benefit Recovery Act, made PRAC's (P.I.P) oral argument a Moot point, demands compensation in the amount of $150,000,000.00 dollars.

## COUNT XIV

[78.] When (PRAC) discovered the initial cost, they had no intension of paying out over $19,000.00 so at first, they deflected the Emergency Room costs of this situation on to the lap of the plaintiff's automobile insurance, GEICO in a No-fault claim timely filed as #0333960060101063 where they have continued to deny any and all of the liability as they (PRAC) stated in a court of competent Jurisdiction leaving Medicare as the primary insurer, as most insurers have done because "This incident did not happen in the plaintiff's motor vehicle," cannot produce any information without implicating themselves in their negligent actions.

[79.] PRAC or (HPP&C) cannot produce any statement, in any claim report, that anyone but the defendants A&M auto brokers/diagnostics garage worked on the vehicle, that of Jayne A. Moormann, should have had her vehicle inspected at PRAC's drive in service or sent out an adjuster to her, diagnosed and repaired the vehicle when the smell became known PRAC through the claims adjuster Jillian Wagner now became negligently responsible knowing that they now all had direct knowledge of the ongoing repair situation attempt to divert their liability on to others who were not involved in the claims process (HPP&C) here in any way shape or form, demands compensation in the amount of $500,000.00 dollars.

## COUNT XV

[80.] These defendants are all equally responsible as they are held in strict liability in Tort, refuse to acknowledge and that they continue to deny that there is anything wrong with the 2008 Dodge Caravan, where Medicare stated they would payout on these Medicals with the provision that if; the plaintiff recovers and he is entitled to be Granted injunctive relief, that Medicare would now be reimbursed first by the proceeds, in the now current amount of $250,000.00 for the expenses payout by the plaintiff's S.S.I. Medical insurance, the argument here is that this insurer PRAC, for so many years and for so many claims have left all of their claims responsibilities to Medicare an every other insurance company to avoid a payout, when they know this No- Fault scheme is a lucrative business which only benefits the auto insurer, demands compensation in the amount of $15,000,000.00 dollars.

## COUNT XVI

[81.] On 1/11/16 the plaintiff reported this incident from Ms. Moormann's Mini-van to Medicare under 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A to Social Security Administration, stating that he had been sickened by the Heater Exchange spewing stench combined with two deadly known poisons gasoline and antifreeze that were noticeable negligence and suspected to be the root cause of an unexpected illness he also called and reported the incident to GEICO (Government Employee's Insurance Company setting up a claim file #0333960060101063 that these repairs were eventually made to the defendant's vehicle for leaking noticeable gas fumes and antifreeze vapor into her vehicle's cabin area that could have been detected with any due diligence by A&M Auto Brokers repair shop A&M Diagnostics, demands compensation in the amount of $5,000,000.00 dollars

[82.] One of their letters dated from (PRAC) regarding the second water pump replacement leaking antifreeze all parties after having full knowledge failed to consider the medical claims file which was blown off as no big deal, as it continues to be a sore spot for the defendants because a water pump costs were only $225.00 but fail to state that changing the water pump is $1,186 in labor estimated by plus $83.00 in tax and $12.00 for the water pump gasket if this was done twice as A&M first stated a second time as (PRAC) stated comes to just under $3,000.00 add in

25

(cont.) as [82.]

the cost of a fuel injector  $125.00 each intake manifold gasket  and the associated
labor cost of approximately $1,000.00 twice, by Circle Dodges estimates is
clearly more than the cost of this vehicle of $4,000.00 even if it were purchased as
a salvage bid demands compensation in the amount of $5,000,000.00 dollars

## PRAYER

Heavenly father walk through my house and take away the long years of suffering
And repair the illness that has stricken me down with an uncalled for, darkness
bring light from that darkness as I have travelled thru the darkest roads in the day
that the Sun appeared to be the Moon light, and in the Moon light there was only
darkness of damages that other cased my family pain on a daily basis, I pray for
any and all of the relief I'm entitled to as prescribed by Law.

U.S.P.S. Certified Mail number
7018  1830  0002  0765  5315
Dated this December 20, 2018

Neal A. Cowe
Post Office Box 24
Englishtown, New Jersey
                                    07726
1-732-648-9829